UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

CARL PRESTON MITCHELL,

               Plaintiff,                             Case No.  1:14-cv-1307

v.

                                                   HON. JANET T. NEFF

COMMISSIONER OF SOCIAL
SECURITY,

               Defendant,

_____/

## OPINION

This is a social security action brought under 42 U.S.C. § 405(g) seeking judicial review of a final decision of the Commissioner of the Social Security Administration (Commissioner).  Plaintiff Carl Mitchell seeks review of the Commissioner's decision denying his claim for disability insurance benefits (DIB) and supplemental security income (SSI) under Titles II and XVI of the Social Security Act.

## STANDARD OF REVIEW

The Court's jurisdiction is confined to a review of the Commissioner's decision and of the record made in the administrative hearing process. *See Willbanks v. Sec'y of Health & Human Servs.*, 847 F.2d 301, 303 (6th Cir. 1998).  The scope of judicial review in a social security case is limited to determining whether the Commissioner applied the proper legal standards in making her decision and whether there exists in the record substantial evidence supporting that decision.  *See Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989).  The Court may not conduct a *de novo* review of the case, resolve evidentiary conflicts, or decide questions of credibility.  *See Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).  It is the Commissioner who

is charged with finding the facts relevant to an application for disability benefits, and her findings are conclusive provided they are supported by substantial evidence. *See* 42 U.S.C. § 405(g).

Substantial evidence is more than a scintilla, but less than a preponderance. *See Cohen v. Sec'y of Health & Human Servs.*, 964 F.2d 524, 528 (6th Cir. 1992) (citations omitted). It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993). In determining the substantiality of the evidence, the Court must consider the evidence on the record as a whole and take into account whatever in the record fairly detracts from its weight. *See Richardson v. Sec'y of Health & Human Servs.*, 735 F.2d 962, 963 (6th Cir. 1984). The substantial evidence standard presupposes the existence of a zone within which the decision maker can properly rule either way, without judicial interference. *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (citation omitted). This standard affords to the administrative decision maker considerable latitude, and indicates that a decision supported by substantial evidence will not be reversed simply because the evidence would have supported a contrary decision. *See Bogle*, 998 F.2d at 347; *Mullen*, 800 F.2d at 545.

## PROCEDURAL POSTURE

Plaintiff was 42 years of age on the date of the Administrative Law Judge's (ALJ) decision. (Tr. 14, 100.) He has an eighth grade education, and was previously employed as a merchandise deliverer, machine operator, and electroplating laborer. (Tr. 66, 90.) Plaintiff applied for benefits on May 1, 2012, alleging that he had been disabled since February 23, 2011, due to arthritis, bipolar disorder, depression, shoulder problems, and cancer. (Tr. 98–100, 112, 168–76.) Plaintiff's applications were denied on October 4, 2012, after which time he requested a hearing

before an ALJ. (Tr. 129–50.)  On July 30, 2013, Plaintiff appeared with his counsel before ALJ

Kimberly Cromer for an administrative hearing with testimony being offered by Plaintiff, a

vocational expert, and two medical experts. (Tr. 62–97.)  In a written decision dated September 5,

2013, the ALJ determined that Plaintiff was not disabled. (Tr. 14–32.)  On October 16, 2014, the

Appeals Council declined to review the ALJ's decision, making it the Commissioner's final decision

in the matter. (Tr. 1–5.)  Plaintiff subsequently initiated this action pursuant to 42 U.S.C. § 405(g),

seeking judicial review of the ALJ's decision.

## ALJ'S DECISION

The social security regulations articulate a five-step sequential process for evaluating

disability.  *See* 20 C.F.R. §§ 404.1520(a-f), 416.920(a-f).[1]  If the Commissioner can make a

dispositive finding at any point in the review, no further finding is required.  *See* 20 C.F.R. §§

404.1520(a), 416.920(a).   The regulations also provide that if a claimant suffers from a

nonexertional impairment as well as an exertional impairment, both are considered in determining

the claimant's residual functional capacity (RFC).  *See* 20 C.F.R. §§ 404.1545, 416.945.

---

[1] 1.  An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. § 404.1520(b));

2.  An individual who does not have a "severe impairment" will not be found "disabled" (20 C.F.R. § 404.1520(c));

3.  If an individual is not working and is suffering from a severe impairment which meets the duration requirement and which "meets or equals" a listed impairment in Appendix 1 of Subpart P of Regulations No. 4, a finding of "disabled" will be made without consideration of vocational factors (20 C.F.R. § 404.1520(d));

4.  If an individual is capable of performing work he or she has done in the past, a finding of "not disabled" must be made (20 C.F.R. § 404.1520(e));

5.  If an individual's impairment is so severe as to preclude the performance of past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if other work can be performed (20 C.F.R. § 404.1520(f)).

Plaintiff has the burden of proving the existence and severity of limitations caused by his impairments and that he is precluded from performing past relevant work through step four. *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003). At step five, it is the Commissioner's burden "to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile." *Id.*

ALJ Cromer determined Plaintiff's claim failed at the fifth step of the evaluation. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since his alleged disability onset date. (Tr. 19.) At the second step in the sequential evaluation, the ALJ determined Plaintiff had the following severe impairments: (1) torn medial meniscus of the left knee with status post arthroscopic surgery and removal of meniscus; (2) osteoarthritis of the left shoulder; (3) degenerative joint disease of the left radial carpal bones in the left wrist; (4) a history of carcinoma of the larynx status-post surgery, radiation, and chemotherapy; (5) mild degenerative changes of the cervical spine; (6) chronic pain syndrome; (7) a bipolar disorder; and (8) substance abuse. (Tr. 19.) At the third step, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or equaled the requirements of the Listing of Impairments. (Tr. 20–21.) At the fourth step, the ALJ found that Plaintiff retained the RFC based on all the impairments:

> to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except lift and carry 20 pounds occasionally and 10 pounds frequently; stand or walk for 6 hours in an 8 hour workday; and sit for 6 hours in an 8 hour workday. The claimant can operate foot controls occasionally but cannot climb ladders, ropes, or scaffolds. The claimant should avoid exposure to unprotected heights, but he can occasionally climb ramps or stairs; frequently balance; and occasionally stoop, crouch, kneel, or crawl. The claimant can frequently reach overhead with the left upper extremity; and frequently perform hand grasping with the left hand; but he

4

> [must] avoid concentrated exposure to cold; avoid even moderate exposure to slippery, broken, or uneven surfaces; avoid even moderate exposure to vibration; and avoid operating hazardous machinery. The claimant is precluded from commercial driving. The claimant can perform simple tasks with only occasional complex verbal communication with no tandem work and no [high][2] production quotas.

(Tr. 21.)  Continuing with the fourth step, the ALJ also determined that Plaintiff was unable to perform any past relevant work. (Tr. 27.)

At the fifth step, the ALJ questioned the vocational expert to determine whether a significant number of jobs exist in the economy which Plaintiff could perform given his limitations. *See Richardson*, 735 F.2d at 964.  The expert identified the positions of housekeeper, merchandise marker, and clerk as jobs an individual similar to Plaintiff could perform. (Tr. 91–92.)  The vocational expert further testified that these jobs amounted to 31,100 positions in the state of Michigan. (Tr. 91–92.)  This represents a significant number of jobs. *See Hall v. Bowen*, 837 F.2d 272, 274 (6th Cir. 1988); *McCormick v. Sec'y of Health & Human Servs.*, 861 F.2d 998, 1000 (6th Cir. 1988).  Accordingly, the ALJ determined that Plaintiff was not under a disability at any point from February 23, 2011, (the alleged disability onset date) through September 5, 2013, (the date of the decision).  (Tr. 28.)

## DISCUSSION

Plaintiff presents the following issues for review:

1.  The ALJ erred in giving inadequate weight to the opinion of treating physician Dr. Dorotinsky;

2.  The ALJ's determination under the psychiatric review technique is not supported by substantial evidence;

---

[2]The RFC contains a typographical error; the hypothetical stated, however, that the Plaintiff would work better "without working in a team environment and very high productivity." (Tr. 91.)

5

3.      The ALJ's credibility finding regarding Plaintiff's pain, symptoms, and functional limitations is unsupported by substantial evidence; and

4.      The ALJ's Step 5 finding is unsupported by substantial evidence because the ALJ relied on an incomplete hypothetical question to the vocational expert.

(ECF No. 11, PageID.578).  The Court will discuss the issues below.

### A.      The ALJ Provided "Good Reasons" For Giving Less Than Controlling Weight to the Medical Opinion of Plaintiff's Treating Physician, Dr. Dorotinsky.

On July 9, 2012, Dr. Benjamin Dorotinsky filled out a worksheet regarding Plaintiff's physical RFC.  On it, Dr. Dorotinsky opined that Plaintiff was far more limited than that recognized by the ALJ. (Tr. 374–75.)  Among other things, the doctor noted that Plaintiff could only sit for one to two hours in an eight hour workday, and stand or walk for one or two hours in the day as well. Plaintiff would be required to shift positions at will, and take unscheduled breaks one or two times an hour for ten to fifteen minutes. (Tr. 374.)  Dr. Dorotinsky further opined that Plaintiff could only grasp, turn, or twist objects with his hands for ten percent of the day. He could only use his fingers for manipulation for twenty percent of the day, and use his arms for reaching ten to fifteen percent of the workday. (Tr. 375.)

The ALJ assigned "no controlling weight" to Dr. Dorotinsky's opinion:

This opinion is not entitled to controlling weight as it is inconsistent with the medical experts' opinions and other opinions of record. Moreover, this opinion is not entitled to great weight as it lacks medical evidence of record to support the conclusions.  For instance, there was no medical evidence of record to support manipulation limitations of 10% of an 8 hour day.  I recognize that there is some degenerative joint disease of the left radial carpal bones in the left wrist (Exhibit 3F), an EMG (Exhibit 7F) was consistent with carpal tunnel syndrome of the right wrist.  However, by the claimant's own testimony, he indicated he has no issue with his dominate right wrist. The medical evidence does not show or confirm grip strength testing to warrant additional manipulation limitation beyond the frequent

6

limitation on the left hand.

Moreover, the extreme standing limitation lacks medical evidence support. I accept and recognize that the claimant underwent left knee arthroscopy with partial medial meniscectomy in July 2012 (Exhibit 12F/3). However, records before this surgery do not show a durational period with an inability to ambulat[e]. And records afterward do not support a finding for further standing limitation. Rather, treating sources record the claimant's posture and gait as normal; he had full range of motion (Exhibit 14F/4). When seen on January 18, 2013, the claimant complained of left hip pain for the past 6 months (Exhibit 14F/6); however, he had full range of motion, no swelling, no deformity, no warmth, and no crepitus. These clinical observations do not support the more extreme limitations assessed by Dr. Dorotinsky, and thus, are not afforded great weight.

(Tr. 26.) Plaintiff claims that in this the ALJ failed to provide "good reasons" for giving less than controlling weight to Dr. Dorotinsky's opinion. (ECF No. 11, PageID.585–88.)

The treating physician doctrine recognizes that medical professionals who have a long history of caring for a claimant and his maladies generally possess significant insight into his medical condition. *See Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994). An ALJ must, therefore, give controlling weight to the opinion of a treating source if: (1) the opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and (2) the opinion "is not inconsistent with the other substantial evidence in the case record." *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 375–76 (6th Cir. 2013) (quoting 20 C.F.R. § 404.1527). It is undisputed that Dr. Dorotinsky qualifies as a treating physician.

The deference afforded to such opinions is appropriate, however, only where the particular opinion "is based upon sufficient medical data." *Miller v. Sec'y of Health & Human Servs.*, No. 91-1325, 1991 WL 229979, at *2 (6th Cir., Nov. 7, 1991) (citing *Shavers v. Sec'y of Health & Human Servs.*, 839 F.2d 232, 235 n.1 (6th Cir. 1987)). The ALJ may reject the opinion of

a treating physician where such is unsupported by the medical record, merely states a conclusion, or is contradicted by substantial medical evidence. *See Cohen*, 964 F.2d at 528; *Miller*, 1991 WL 229979, at *2 (citing *Shavers*, 839 F.2d at 235 n.1); *see also Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286–87 (6th Cir. 1994).

If an ALJ accords less than controlling weight to a treating physician's opinion, the ALJ must "give good reasons" for doing so. *Gayheart*, 710 F.3d at 376. Such reasons must be "supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Id.* This requirement "ensures that the ALJ applies the treating physician rule and permits meaningful review of the ALJ's application of the rule." *Id.* (quoting *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004)). Simply stating that the physician's opinions "are not well-supported by any objective findings and are inconsistent with other credible evidence" is, without more, too "ambiguous" to permit meaningful review of the ALJ's assessment. *Id.* at 376–77.

Finally, if the ALJ gives less than controlling weight to a treating physician's opinion, the ALJ must still determine the weight to be afforded such. *Id.* at 376. In doing so, the ALJ must consider the following factors: (1) length of the treatment relationship and frequency of the examination, (2) nature and extent of the treatment relationship, (3) supportability of the opinion, (4) consistency of the opinion with the record as a whole, (5) the specialization of the treating source, and (6) other relevant factors. *Id.* (citing 20 C.F.R. § 404.1527). While the ALJ is not required to explicitly discuss each of these factors, the record must nevertheless reflect that the ALJ considered those factors relevant to her assessment. *See, e.g., Oldham v. Astrue*, 509 F.3d 1254,

1258 (10th Cir. 2007); *Undheim v. Barnhart*, 214 F. App'x 448, 450 (5th Cir. 2007).

The ALJ articulated two reasons for discounting the opinion of Dr. Dorotinsky: the opinion was inconsistent with the opinions of the two testifying medical experts and was also inconsistent with specific portions of the medical record.  As to the former, such cannot constitute substantial evidence on its own for discounting the opinion of a treating physician.  *Shelman v. Heckler*, 821 F.2d 316, 321 (6th Cir. 1987)); *Stevens v. Comm'r of Soc. Sec.*, No. 1:12-CV-977, 2014 WL 357307, at *8 (W.D. Mich. Jan. 31, 2014) ("[E]vidence sufficient to justify affording less than controlling weight to a treating physician's opinion 'must consist of more than the medical opinions of the nontreating and nonexamining doctors.'") (quoting *Gayheart*, 710 F.3d at 377).

Here, however, the ALJ also pointed to specific portions of the medical record to conclude that Dr. Dorotinsky's opinion was unsupported.  While the doctor based his opinions on the belief that Plaintiff was experiencing weak grip strength and could not sit, stand or walk for long periods of time, the medical evidence does not support such a conclusion. Plaintiff testified, for example, that his right wrist was "okay," though he did experience pain in using it. (Tr. 71.) Such is inconsistent with the extreme limitation recommended by the doctor.  As to the left wrist, the ALJ recognized that there was some degenerative disease and that there was evidence of radioscaphoid arthritis. (Tr. 26, 311).  The ALJ reasonably decided, however, that such impairments, along with a lack of further specific objective testing, did not support a conclusion that Plaintiff was as limited in the use of his hands, fingers, and arms.  Regarding Plaintiff's ability to stand and walk, the ALJ pointed to treatment notes showing Plaintiff was not as limited in standing or walking as that found by Dr. Dorotinksy. (Tr. 486–87, 490.) Though Plaintiff experienced pain, he had a normal gait and full range of motion. (Tr. 486–87.)  Accordingly, the ALJ gave good reasons, supported by

substantial evidence, for discounting Dr. Dorotinksy's opinion.

Plaintiff relatedly claims that the ALJ was required to give more weight to Dr. Dorotinksy's opinion than the opinions of those examiners who had not examined Plaintiff. (ECF No. 11, PageID.588.)  Plaintiff is mistaken. The ALJ was free to consider these opinions and determine what weight, if any, they should be given. *See* 20 C.F.R. § 404.1527(e)(2)(i) (state agency medical consultants and other program physicians are "highly qualified physicians . . . who are also experts in Social Security disability evaluation"); *see also Brooks v. Comm'r of Soc. Sec.*, 531 F. App'x 636, 642 (6th Cir. 2013) ("[I]n appropriate circumstances, opinions from State agency medical and psychological consultants . . . may be entitled to greater weight than the opinions of treating or examining sources.").  The regulations further provide that ALJs may "ask for and consider opinions from medical experts on the nature and severity of your impairment(s) and on whether your impairment(s) equals the requirements of any impairment." 20 C.F.R. § 416.927(e)(2)(iii); *see Atterberry v. Sec'y of Health & Soc. Servs.*, 871 F.2d 567, 570 (6th Cir. 1989) (a non-examining medical expert's opinion "based upon the objective evidence of medical reports made by the claimant's treating physicians and testimony given by the claimant himself" which is consistent with the evidence of record can constitute substantial evidence to support an ALJ's decision).  This is what the ALJ did in this case.  The ALJ found that the experts' opinions that Plaintiff was capable of performing a limited range of light work was persuasive because it was consistent with the record as a whole. (Tr. 26.)  The Court finds no error in the ALJ's analysis. Accordingly, Plaintiff's claim of error will be denied.

**B.    The ALJ's RFC Assessment Adequately Considered Plaintiff's Mental Impairments.**

Plaintiff next contends that the ALJ improperly found that he had only "mild"

limitations in his ability to concentrate, that he actually had moderate limitations in this ability, and that the ALJ erred because this impairment was not reflected in the RFC

Plaintiff's contention is without merit. Contrary to Plaintiff's assertion, the ALJ did not find that Plaintiff had mild limitations in his ability to concentrate; rather, the ALJ concluded that Plaintiff had mild to moderate difficulties with regard to concentration, persistence, and pace. (Tr. 20.) This is consistent with the opinion of Dr. O'Brien who testified that Plaintiff had mild to moderate difficulties in concentration. (Tr. 75.) By stating that Plaintiff had limitations from mild up to moderate, the ALJ's determination is also consistent with Dr. Rushlau's opinion. (Tr. 105.)

To the extent Plaintiff contests the ALJ's RFC determination, his claim is also without merit. RFC is a medical assessment of what an individual can do in a work setting in spite of functional limitations and environmental restrictions imposed by all of his medically determinable impairments. 20 C.F.R. § 416.945. It is defined as "the maximum degree to which the individual retains the capacity for sustained performance of the physical-mental requirements of jobs." 20 C.F.R. Part 404, Subpt. P, App. 2, § 200.00(c); *see Cohen*, 964 F.2d at 530. The ALJ addressed Plaintiff's mental disorder in the RFC, by limiting him to "simple tasks with only occasional complex verbal communication with no tandem work and no [high] production quotas." (Tr. 21.)

At bottom, Plaintiff's reliance on the ALJ's Paragraph B finding is misplaced. The ALJ made this finding at step three of the sequential evaluation when she considered whether Plaintiff met the requirements of various listed mental impairments (12.04 and 12.09). (Tr. 20.) This finding was not the RFC finding made at step four of the evaluation. *See Gentry v. Comm'r of Soc. Sec.*, 741 F.3d 708, 722 (6th Cir. 2014) (RFC is determined at step four of the sequential evaluation); 20 CFR Pt. 404, Subpt. P, App. 1, 12.00.A. ("RFC is a multidimensional description of the

11

work-related abilities you retain in spite of your medical impairments. An assessment of your RFC complements the functional evaluation necessary for paragraphs B and C of the listings by requiring consideration of an expanded list of work-related capacities that may be affected by mental disorders when your impairment(s) is severe but neither meets nor is equivalent in severity to a listed mental disorder"). As the court explained in *Pinkard v. Comm'r of Soc. Sec.*, No. 1:13–cv–1339, 2014 WL 3389206 (N.D. Ohio July 9, 2014):

> Plaintiff argues that the ALJ erred in concluding that Plaintiff had moderate difficulties in concentration, persistence, and pace, while failing to include an appropriate limitation for these difficulties in the RFC findings . . . Plaintiff refers to the ALJ's paragraph B findings in his evaluation of Plaintiff's depression under 12.04 of the listing of impairments [ ]. 20 C.F.R. pt. 404, subpt. P, app. 1 Sections 12.04, 12.05, 12.06. However, the ALJ does not have to include paragraph B finding[s] in his RFC finding. Paragraph B findings under the listings are findings at step three of the sequential evaluation process, and are not RFC findings pertaining to steps four and five of the sequential evaluation process. 20 C.F.R. pt. 404, subpt. P, app. 1, Section 12.00. Hence, the ALJ was correct in finding that Plaintiff had moderate limitations in evaluating her mental impairment under the listings at step three of the sequential evaluation process, and in not including a "moderate limitation in concentration, persistence, and pace" in his residual functional capacity finding at steps four and five.

*Pinkard*, 2014 WL 3389206 at *10. It is well established that the Paragraph B criteria used in determining whether a claimant meets or equals a listed impairment "are not an RFC assessment." *See* Policy Interpretation Ruling Titles II and XVI: Assessing Residual Functional Capacity in Initial Claims, SSR 96–8p (SSA July 2, 1996) (reprinted at 1996 WL 374184). RFC is a more detailed assessment made by "itemizing various functions contained in the broad categories found in paragraphs B and C of the adult mental disorder listings in 12.00 or the Listing of Impairments." *Id*. at 4; *see Smith v. Colvin*, No. 3–13–cv–570, 2014 WL 2159122, at *4 (W.D. N.C. May 23, 2014);

12

*Bordeaux v. Comm'r of Soc. Sec.*, No. 3:12–cv–1213, 2013 WL 4773577, at *12–13 (D. Or. Sept. 4, 2013); *Collier v. Comm'r of Soc. Sec.*, No. 1:11–cv–1144, 2013 WL 4539631, at *5–6 (W.D. Mich. Aug.27, 2013); *Reynolds v. Comm'r of Soc. Sec.*, No. 10–110, 2011 WL 3897793, at *3 (E.D. Mich. Aug.19, 2011). The ALJ's findings at earlier steps in the sequential analysis do not undermine her findings that Plaintiff retained the RFC that included "simple tasks" and no high production quotas. (Tr. 21). Plaintiff's claim is therefore rejected.

### C.    The ALJ Did Not Err in Discounting Plaintiff's Credibility.

At the administrative hearing, Plaintiff testified that he was further impaired in the use of his left arm than that recognized by the ALJ. For example, Plaintiff stated that the wrist is "bone to bone," requires fusion surgery, and that as it stands, he "cannot move [his left] wrist period." (Tr. 79.) Plaintiff argues that in discounting his credibility, the ALJ failed to properly consider the factors set forth in SSR 96–7p. (ECF No. 11, PageID.590–91).

SSR 96–7p is a social security ruling addressing the process for assessing the credibility of a claimant's statements regarding his or her symptoms. See Policy Interpretation Ruling Titles II and XVI: Evaluation of Symptoms in Disability Claims: Assessing the Credibility of an Individual's Statements, SSR 96–7p (SSA July 2, 1996) (reprinted at 1996 WL 374186). "Social Security Rulings do not have the force and effect of law, 'but are binding on all components of the Social Security Administration' and represent 'precedent final opinions and orders and statements of policy and interpretations' adopted by the Commissioner." *Ferguson v. Comm'r of Soc. Sec.*, 628 F.3d 269, 272 n.1 (6th Cir. 2010) (quoting 20 C .F.R. § 402.35(b)(1)). The Sixth Circuit has "refrained from ruling whether Social Security Rulings are binding on the Commissioner in the same way as Social Security Regulations, but assume[s] that they are." *Id.* Accordingly, in

addition to the objective evidence, the ALJ is to consider the following factors when assessing the

credibility of a claimant's statements regarding his symptoms:

1.      The individuals daily activities;

2.      The location, duration, frequency, and intensity of the individual's pain or other symptoms;

3.      Factors that precipitate and aggravate the symptoms;

4.      The type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms;

5.      Treatment, other than medication, the individual receives or has received for relief of pain or other symptoms;

6.      Any measures other than treatment the individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and

7.      Any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms.

1996 WL 374186 at * 3. Under SSR 96–7p the ALJ is required to "consider" the seven-listed

factors, but there is no requirement that the ALJ discuss every factor. *See White v. Comm'r of Soc.*

*Sec.*, 572 F.3d 272, 287 (6th Cir. 2009); *see also Coleman v. Astrue*, No. 2:09–cv–36, 2010 WL

4094299, at * 15 (M.D. Tenn. Oct.18, 2010) ("There is no requirement [ ] that the ALJ expressly

discuss each listed factor."); *Roberts v. Astrue*, No. 1:09–cv–1518, 2010 WL 2342492, at *11 (N.D.

Ohio June 9, 2010) ("[T]he ALJ need not analyze all seven factors contained in SSR 96–7p to

comply with the regulations.").  SSR 96–7p merely sets forth a list of factors for the ALJ to consider

in addressing the claimant's credibility.  *See White*, 572 F.3d at 287; *see also Reynolds v. Comm'r*

*of Soc. Sec.*, 424 F. App'x 411, 417 (6th Cir. 2011); *Parsons v. Astrue*, No. 1:09–cv–2695, 2011 WL

887618, at *6 (N.D. Ohio Feb.17, 2011) ("The ALJ conducted the appropriate analysis pursuant to

SSR 96–7p, although not articulated in the manner Plaintiff would prefer."). The ALJ's discussion of Plaintiff's credibility began with the relevant regulations and social security rulings, including SSR 96–7p. (Tr. 21.) The ALJ's reference to SSR 96–7p indicates that she "considered" all the ruling's factors. *Brown v. Comm'r of Soc. Sec.*, No. 1:10–cv–705, 2012 WL 951556, at * 5 (W.D. Mich. Feb 27, 2012).

Substantial evidence supports the ALJ's credibility determination. As an initial matter, it is not sufficient for Plaintiff to point to pieces of evidence on which the ALJ could have based a finding in his favor. His burden on appeal is much higher. He must "demonstrate that the ALJ's determination that he was not disabled is not supported by substantial evidence." *Peterson v. Comm'r of Soc. Sec.*, 552 F. App'x 533, 540 (6th Cir. 2014). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001). Credibility determinations concerning a claimant's subjective complaints are peculiarly within the province of the ALJ. *See Gooch v. Sec'y of Health & Human Servs.*, 833 F.2d 589, 592 (6th Cir. 1987). The Court does not make its own credibility determinations. *See Walters v. Comm'r of Soc. Sec.*, 127 F.3d at 528. The Court's "review of a decision of the Commissioner of Social Security, made through an administrative law judge, is extremely circumscribed . . . ." *Kuhn v. Comm'r of Soc. Sec.*, 124 F. App'x 943, 945 (6th Cir. 2005). The Commissioner's determination regarding the credibility of a claimant's subjective complaints is reviewed under the "substantial evidence" standard. This is a "highly deferential standard of review." *Ulman v. Comm'r of Soc. Sec.*, 693 F.3d 709, 714 (6th Cir. 2012). "Claimants challenging the ALJ's credibility determination face an uphill battle." *Daniels v. Comm'r of Soc. Sec.*, 152 F. App'x 485, 488 (6th Cir. 2005); *see Ritchie v. Comm'r of Soc. Sec.*, 540 F. App'x 508,

511 (6th Cir. 2013) ("We have held that an administrative law judge's credibility findings are 'virtually unchallengeable.'").  "Upon review, [the court must] accord to the ALJ's determinations of credibility great weight and deference particularly since the ALJ has the opportunity, which [the court] d[oes] not, of observing a witness's demeanor while testifying." *Jones*, 336 F.3d at 476.

The Sixth Circuit recognizes that meaningful appellate review requires more than a blanket assertion by an ALJ that "the claimant is not believable."  *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 248 (6th Cir. 2007). The *Rogers* court observed that SSR 96–7p requires that the ALJ explain her credibility determination and that the explanation "must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight."  *Id.*

The ALJ observed that the objective medical evidence failed to provide strong support for the Plaintiff's allegations of disabling symptoms and limitations regarding his left wrist. The ALJ noted, for example, a January 7, 2011, EMG study on Plaintiff's wrists.  The results showed "moderately severe" carpal tunnel syndrome on the right wrist, but only a minor lesion on the left median nerve that the doctor found "may suggest carpal tunnel" in the left wrist. (Tr. 428.) The ALJ noted, however, that Plaintiff stated his right wrist was "okay," indicating that Plaintiff's allegations were not as severe as claimed. (Tr. 26, 71). Several other examinations revealed normal joints and muscles. (*See, e.g.*, Tr. 322, 335, 342.).  Accordingly, substantial evidence supports the ALJ's decision to discount the Plaintiff's testimony.  As noted, however, the ALJ recognized that there was some degenerative changes to Plaintiff's left wrist. (Tr. 311)  As such, the ALJ did not find that Plaintiff was not limited in the use of his left wrist, but rather adopted the testimony of the medical expert by limiting Plaintiff to only frequent grasping with his left hand, and moderate

16

exposure to vibration, and no exposure to work hazards. (Tr. 25.) The Court finds that this limitation is supported by substantial evidence, and Plaintiff's argument is rejected.

### D.    The ALJ's Step 5 Determination is Supported by Substantial Evidence.

Plaintiff further contends that the ALJ should have posed a hypothetical to the vocational expert at the administrative hearing that incorporated Dr. Dorotinsky's opinion, Plaintiff's moderate limitation in concentration, and his subjective statements. (ECF No. 11, PageID.592.) The Court disagrees.

A vocational expert's testimony in response to a hypothetical question accurately reflecting a claimant's impairments provides substantial evidence supporting the Commissioner's decision at step 5. *Varley v. Sec'y of Health & Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987). An ALJ's hypothetical question, however, need only include those limitations which the ALJ accepts as credible. *See Blacha v. Sec'y of Health & Human Servs.*, 927 F.2d 228, 231 (6th Cir. 1990). It is well settled that a hypothetical question to a vocational expert need not include unsubstantiated complaints. *See Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1235 (6th Cir. 1993); *see also Carrelli v. Comm'r of Soc. Sec.*, 390 F. App'x 429, 438 (6th Cir. 2010) ("[I]t is 'well established that an ALJ may pose hypothetical questions to a vocational expert and is required to incorporate only those limitations accepted as credible by the finder of fact.'") (quoting *Casey*, 987 F.2d at 1235). The expert does not determine a claimant's medical restrictions or how they impact the claimant's RFC–that is the ALJ's job. *See Maziarz v. Sec'y of Health & Human Servs.*, 837 F.2d 240, 247 (6th Cir. 1987). The Court has concluded the ALJ provided good reasons, supported by substantial evidence, for giving Dr. Dorotinsky's opinion less weight. The Court has also found that substantial evidence supports the ALJ's decision to discount Plaintiff's credibility.

Finally, as noted, Paragraph B findings are not RFC findings, and accordingly the ALJ was not bound to pose them to the expert. Accordingly, the expert's testimony provides substantial evidence for the ALJ's step 5 determination, and Plaintiff's claim of error is denied.

## CONCLUSION

For the reasons set forth herein, the Commissioner's decision will be **AFFIRMED**. A separate Judgment shall issue.


Dated:  ___January 26, 2016___          ___/s/ Janet T. Neff_____
                                        JANET T. NEFF
                                        UNITED STATES DISTRICT JUDGE